UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                    Case No. 10-20635
                        Plaintiff,                  Honorable David M. Lawson

v.

ERIK LYLES FREEMAN, REYMOYNE
LYNN THORNTON, VANESSA EDITH
GUDINO, ANTHONY LYLES,
CHANGA-ORONDE LYLES, Jr.,
APOLINAR LUCERO, BRANDON
RICHARD SCOTT, and JAMES ALVIN
WATTS,

                        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION FOR RECONSIDERATION

Following the filing by defendant Erik Freeman of a motion to suppress evidence collected through a wiretap and the government's effort to present wiretap authorization documents to the Court without making them part of the record, the Court entered an order requiring that (1) the parties confer and jointly file an appendix containing the documents required to adjudicate the motion; and (2) the submitted documents be un-redacted. The Court permitted the government to file a motion under Local Rule 5.3(b) if the government had good reasons to file the documents under seal. The Court also characterized as an *ex parte* contact the government's attempt to lodge the wiretap documents in chambers without making them part of the record. Now before the Court is the government's motion to reconsider that order, alleging that the government should not have to seek separate permission to seal the wiretap documents because a sealing order was entered in a separate file that authorized the wiretaps, there are reasons for sealing and redacting the documents

because of an ongoing investigation and the safety of informants, and its effort to present the documents should not be characterized as an *ex parte* communication because the defendants were given copies during discovery and the government did not seek advantage when it privately lodged the documents with the Court.  After ordering responses from the defendants, the Court held a hearing on the motion for reconsideration on June 10, 2011.  The Court now finds that reconsideration is appropriate as to some aspects of the Court's prior order and will grant the government's motion in part.

I.

On October 28, 2010, defendants Erik Lyles Freeman, Reymoyne Lynn Thornton, Changa-Oronde Lyles, Jr., Apolinar Lucero, Brandon Richard Scott, Vanessa Edith Gudino, Anthony Lyles, and seven others were charged in a 37-count indictment alleging various drug, weapons, and money laundering offenses.  The indictment also sets forth criminal forfeiture allegations, seeking a forfeiture money judgment in the amount of $27,766,800.

During the investigation of the alleged conspiracy, the government applied for and obtained orders permitting the interception of cellular telephone communications.  The initial wiretap application was submitted to and approved by Judge Bernard Friedman (Tracking No. 09US60058-B) on September 29, 2009.  A subsequent wiretap application (for the same target telephone number) was submitted to the court and was signed by Judge Stephen Murphy in Judge Friedman absence on October 31, 2009 (Tracking No. 09US60058-B1).  Both the initial interception order and the subsequent renewal authorized the interception of a targeted telephone number used by defendant Erik Freeman.  It is not clear whether the wiretap order was renewed again, but the

government contends that on February 8 of this year, Judge Robert Cleland of this district entered a protective order sealing the documents relating to the wiretap.

On April 27, 2011, defendant Freeman filed a motion in the present case to suppress evidence obtained through electronic surveillance, alleging that the statutory prerequisites for intercepting the conversations were not established and the interception violated the Fourth Amendment. Defendants Reymoyne Lynn Thornton, Changa-Oronde Lyles, Jr., Apolinar Lucero, Brandon Richard Scott, Vanessa Edith Gudino, and Anthony Lyles have filed notices of joinder in the motion. The government has filed a response. Neither the motion nor the response includes the wiretap application, supporting affidavit, or authorizing order.

The government lawyer sent an e-mail message to the Court's case manager on May 17, 2011 expressing its desire to furnish a copy of the wiretap applications, affidavits, orders, and interim reports to the Court. Government counsel said she was hesitant to file the documents on the public record, suggesting there may be information that could identify a confidential source. In the e-mail message, government counsel communicated the fact that it had furnished copies of the materials to the defendants as part of the discovery packet in the case.

Through its case manager, the Court informed government counsel that the documents should be made a part of the record in this case and that if there were grounds to seal the documents, the government should describe them in a motion to seal. Counsel for the government informed the Court that the documents were under seal in a different proceeding — the wiretap file — under an order entered February 8, 2011 by Judge Cleland. This Court repeated its instructions to the government that anything submitted in support of or opposition to the motion must be made part of

the record and filed in *this* case, and if sealing was desired, the government should present its grounds in an appropriate motion.

Despite these clear instructions, on May 18, 2011, the government counsel caused to be delivered to the Court's chambers a binder purportedly containing redacted copies of the wiretap applications, affidavits, orders, interim reports for the wiretaps authorized on September 29, 2009 and October 31, 2009, and the order entered by Judge Cleland concerning those documents. The Court did not review the contents of the binder. Instead, upon receiving the materials, the Court directed its case manager to contact government counsel to inform her that it viewed its delivery of the materials as an improper attempt at *ex parte* communications, and ordered her to return to chambers and retrieve the materials immediately. This time, the government complied.

The government filed its response to defendant Freeman's motion to suppress on May 18, 2011, the same day it submitted the materials to the Court. In its response, the government stated that the Title III materials were provided to the defendants as part of the discovery packet for this case, and therefore its separate, off-the-record submission of the documents to the Court in connection with its defense of the motion to suppress was not an *ex parte* contact. Copies of the relevant wiretap documents were not included with the government's answer.

On May 26, 2011, the Court entered an order requiring the government and the defendants who have joined in this motion to confer and prepare a joint appendix containing unredacted copies of the Title III applications, orders, and supporting affidavits that are being challenged in the defendant's motion to be submitted to the Court on the record no later than June 3, 2011. That filing never occurred. Instead, on June 1, 2011 the government filed a motion for reconsideration of the Court's May 26, 2011 order. On June 3, 2011, the Court entered an order directing the defendants

-4-

to respond to the government's motion.  Defendants Scott, Gudino, Anthony Lyles, and Changa-Oronde Lyles have filed responses.  Defendant Freeman did not file a response because he was between attorneys at the time.

At the June 10, 2011 hearing on the motion, Rita Foley, the assistant United States attorney that has been defending the suppression motion, explained that she pursued the course of conduct described above based on advice she received from more experienced attorneys in her office. According to her explanation, it appears to be the view of the United States Attorney's Office in this district that documents on file in any case in this district are part of the record in every other case. When asked to address the Court's concern about ensuring a complete record in the likely event that a decision on the motion would be reviewed by another court, Ms, Foley stated that "the Appellate Division in my office . . . advised that it would be made part of the record on appeal pursuant to a [Federal Rule of Appellate Procedure] 10(e) order, which allows parties to make sealed materials part of the record on appeal."  Mot. Recon. Hr'g Tr., June 10, 2011, at 14-15.  The appellate division also told Ms. Foley that "because [the wiretap documents] were sealed in the Eastern District of Michigan, that they would, in fact, be part of the record in this case."  *Id.* at 15.  When asked why she ignored the Court's direction to file the documents and not present the unfiled items to chambers, Ms. Foley explained that someone "more senior in [her] office . . . informed [her] that [the documents were] already filed as part of the record, albeit under the tracking number for the wiretap, and that since it was under seal and subject to a protective order, that I should not file it under this case number."  *Id.* at 16.

II.

Motions for reconsideration may be granted pursuant to E.D. Mich. LR 7.1(h)(3) when the moving party to shows (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (citations omitted). However, motions for reconsideration should not be granted when they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3).

A.   Filing the supporting documents

It is elemental that a motion challenging the propriety of a wiretap order requires the Court to review the authorizing order itself and all supporting documents submitted to the authorizing judge in order to ensure compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and the Fourth Amendment. *See United States v. Gray*, 521 F.3d 514, 521-24 (6th Cir. 2008). Equally clear is that the court of appeals will confine its review of this Court's decisions to matters that appear in the trial court record. *See United States v. Wagner*, 382 F.3d 598, 615 n.4 (6th Cir. 2004) (citing Fed. R. App. P. 10(a) (limiting the record on appeal to "the original papers and exhibits *filed* in the district court," "the transcript of proceedings, if any," and the district court's docket entries (emphasis added))); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (holding that the court of appeals "will not entertain on appeal factual recitations not presented to the district court").

Motions in criminal cases must be in writing, and supporting papers, including affidavits, must be served with the motion. *See* Fed. R. Crim. P. 47(a), (c), 49(a). It is not clear why the

-6-

defendants have not furnished the wiretap documents to the Court in support of their motion, but the government's idea that somehow they are part of the record in this case already does not find support in the national or local rules or the decisional or statutory law.

Records in one case filed in court are not automatically part of the record in any other case. Certainly, a court may take judicial notice of its own records, but that rule addresses an evidentiary concept, and it usually is limited to matters between the same parties. *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 441 (6th Cir. 1981). The rule does not serve to expand the record in a discrete case.

Even if it did, there is no other court file in this district that contains the necessary documents. Under 18 U.S.C. § 2518(8), the Court need not maintain a file with the orders and other documents authorizing the wiretap. Instead, "[c]ustody of the applications and orders shall be wherever the judge directs." 18 U.S.C. § 2518(8)(b). In this district, the custody order accompanying the wiretap papers directs the United States Attorney's office to maintain the records. The fact that the documents are kept by the plaintiff in this case reinforces the need to make them part of the record when the propriety of the electronic interceptions are challenged.

The idea that the parties could simply expand the record in the event appellate review was required also finds no support in the rules of procedure. The government's proposed resort to Federal Rule of Appellate Procedure 10(e) would countenance an abuse of that rule. Rule 10(e) allows supplementation of the record on appeal only if an item is "omitted from or misstated in the record by *error or accident*." Fed. R. App. P. 10(e) (emphasis added). The government's proposed procedure to not file the necessary documents in this case and then add them later to the appellate record is a matter of design, hardly the circumstance contemplated by Rule 10(e).

-7-

The Court's direction to file the necessary documents and make them part of the record in this case was not idiosyncratic, and the government's repudiation of that order cannot be justified by the reasons it has offered. There is no palpable defect in that part of the Court's order, and therefore reconsideration of that aspect of it is denied. The parties must file their joint appendix *in the record in this case* within the time provided below.

## B.  Redaction

The government has represented that it has furnished defense counsel with copies of the orders authorizing the wiretaps, applications, and supporting affidavits, but portions of them have been redacted. The Court ordered unredacted copies to be submitted to it in order to adjudicate the motion. Under 18 U.S.C. § 2518(9), if the government desires to use intercepted communications at trial, it must furnish the wiretap papers to the defense. The statute provides:

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.

18 U.S.C. § 2518(9). There is no provision in the statutory text for redaction, although nothing prevents the government from seeking permission to redact the documents. The Court's order requiring unredacted copies to be filed was consistent with the statute.

The government points out that the defense has had access to the redacted papers supporting the wiretap application for some time, and none of the defendants have complained about the redaction. That remains the case today. If the defendants have not sought unredacted versions of the wiretap papers, the Court sees no reason to press the point. The order, therefore, will be modified to allow the government and the defendants to furnish redacted copies of the necessary

-8-

documents in their joint appendix.  If any party believes that a redaction interferes with his or her ability to support a legal argument, that party may seek relief by filing an appropriate motion.

### C.  Requirement of a motion to seal

The government argues that it should not be required to file a motion to seal the Title III materials pursuant to E.D. Mich. LR 5.3(b) for the purposes of submitting them on the record in this case.  The government argues that Local Rule 5.3(b) concerns the sealing of items not authorized to be sealed by statute ("[e]xcept as provided by statute or rule"), and that it is therefore inapplicable to Title III applications and orders.  Instead, the government contends that it should be allowed to proceed under Local Rule 5.3(a), which states, "When a statute or rule authorizes filing a document or other item under seal in a civil case, the item may be filed without a court order."  The government states that the applicable wiretap statute provision requires that "[a]pplications made and orders granted under this chapter shall be sealed by the judge."  18 U.S.C. § 2518(8)(b).  The government argues further that if it were required to seek permission to file these items under seal and present supporting grounds, then the status of the documents "would be muddied."  Gov't Br. in Supp. of Mot. for Recon. at 9.

Title III governs the interception by the government of wire, electronic, and oral communications.  Section 2518(8)(b) provides that

> Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

The statute does not define "good cause," and neither the Supreme Court nor the Sixth Circuit has spoken on the issue.  The Sixth Circuit has noted that good cause existed when Department of

-9-

Justice superiors requested copies of the signature pages from wire interceptions and from the moving papers that accompanied those authorizations. *United States v. Florea*, 541 F.2d 568, 575 (6th Cir. 1976).

The Second Circuit has found that good cause exists when the party requesting disclosure is an "aggrieved person." *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 407-08 (2d Cir. 2009) (citing *Nat'l Broad. Co. v. U.S. Dep't of Justice*, 735 F.2d 51, 55 (2d Cir. 1984)). A number of other courts have adopted the Second Circuit's standard and reasoning. *See United States v. Blagojevich*, 662 F. Supp. 2d 998, 1001-1003 (N.D. Ill. 2009); *In re Interception of Wire & Oral Communc'n [George T. Kattar]*, 682 F. Supp. 669, 673 (D.N.H. 1988); *United States v. Nelson*, No. 10-23-32, 2011 WL 305005, at *2 (M.D. Fla. Jan. 28, 2011). That is a sensible approach, and it finds support in legislative history. The Senate Report on the 1968 enactment of Title III states:

> Subparagraph (b) provides that applications and orders for authorization shall be treated confidentially. Particularly in renewal situations, they may be expected to contain sensitive information. The provision requires them to be sealed and kept wherever the judge directs, which would normally be with the records themselves. Applications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under (10)(a) . . . .

S. Rep. No. 90-1097, at 60 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2177. Subsection 10(a), referenced by the Senate Report, provides standing, in certain circumstances, for an "aggrieved person" to "move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom." 18 U.S.C. § 2518(10)(a). Section 2510(11), in turn, defines an aggrieved person as "a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

-10-

The government in this case has stated its intention to use the fruits of the wiretaps in evidence at trial, and that many of the defendants, including moving defendant Freeman, have had their conversations recorded. When section 2518 is read in its entirety, it becomes plain that the contents of wiretaps, as well as the supporting and authorizing papers, must be kept secret while the investigation is underway, and thereafter until there is an intention to use the fruits of a wiretap in a prosecution or an "aggrieved person" challenges the propriety of the government's actions. When the latter events transpire, the government's activities must see the light of day and be subject to careful examination in open court and on the public record. If "[a]ny aggrieved person . . . move[s] to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom," 18 U.S.C. § 2518(10)(a), good cause to break the seal mandated by section 2518(8)(b) is established automatically. *See* 18 U.S.C. § 2518(d) ("The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the . . . applications and orders as the judge determines to be in the interest of justice.").

Under these circumstances, section 2518(8)(b) does not authorize filing wiretap documents, that is "the court order, and the accompanying application [including the supporting affidavit]," 18 U.S.C. § 2518(9), under seal within the meaning of Local Rule 5.3(a). Instead, the government and any other party seeking to seal the documents must move for that relief under Local Rule 5.3(b).

Moreover, there is a "long-established legal tradition" of open access to court documents. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983); *see also Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996) ("Rule 26(c) allows

the sealing of court papers only 'for good cause shown' to the court that the particular documents

justify court-imposed secrecy."). As the court of appeals explained in *In re Knoxville News–Sentinel*

*Co., Inc.*, 723 F.2d 470 (6th Cir. 1983), there is a "presumptive right" of public access to court

records which permits inspection and copying.

> The recognition of this right of access goes back to the Nineteenth Century, when,
> in *Ex Parte Drawbraugh*, 2 App. D.C. 404 (1894), the D.C. Circuit stated: "Any
> attempt to maintain secrecy, as to the records of this court, would seem to be
> inconsistent with the common understanding of what belongs to a public court of
> record, to which all persons have the right of access."

*Id.* at 474 (citations omitted). A presumptive right to file sealed materials in court cases, as the

government urges here, runs contrary to the weight of authority. There is a strong public policy in

favor of public access to judicial proceedings. *See, e.g., E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98

F.3d 1406, 1409 (D.C. Cir. 1996); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993);

*see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part and

dissenting in part) (declaring that "[s]ealing court records . . . is a drastic step, and only the most

compelling reasons should ever justify non-disclosure of judicial records").

The government asserts that revealing information in the wiretap documents may trench upon

an informant's privilege, subject individuals to potential harm, or violate the privacy rights of third

parties whose conversations may have been intercepted. Those reasons may provide a sound basis

for submitting records under seal. The Court's "supervisory power over its own records and files,"

*Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978), includes fashioning protective orders

that limit access to certain court documents. *See, e.g.*, Fed. R. Civ. P. 26(c); *see also Bank of Am.*

*Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (stating that

the court has a duty to "balance the factors favoring secrecy against the common law presumption

-12-

of access"); *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests."). However, the government so far has identified those interests only in general terms. They may turn out to be valid grounds for sealing the documents, but the government cannot be excused from moving for such relief on the basis of its mere *ipsi dixit*.

The Court does not find any palpable error in its order that requires the government to file an appropriate motion under Local Rule 5.3(b) if it desires to file the joint appendix, or parts of it, under seal. Therefore, that part of the motion for reconsideration will be denied.

### D. *Ex parte* communication

The government also asks the Court to reconsider its statement in the order that lodging the documents in chambers without making them part of the record amounts to an improper attempt at an *ex parte* communication with the Court. The government insists that it sought no advantage in its actions, and the defendants had copies of the items submitted in support of the government's motion response. As a practical matter, the government also notes that such a finding will trigger an investigation of Ms. Foley by the Department of Justice Office of Professional Responsibility and may have career-long implications.

Neither this circuit, the Michigan Rules of Professional Conduct, nor the Code of Conduct for United States Judges defines the term "*ex parte* communication." Michigan Rule of Professional Conduct 3.5 states that a lawyer shall not "communicate ex parte with such a person concerning a pending matter, unless authorized to do so by law or court order." The government refers the Court to Black's Law Dictionary, which defines an *ex parte* communication as "[a] communication

between counsel and the court when opposing counsel is not present.  Such communications are ordinarily prohibited."  Black's Law Dictionary (9th ed. 2009).

Canon 2 of the Code of Conduct for United States Judges states that a judge should avoid impropriety and the appearance of impropriety in all activities.  The commentary to the Canon reads:

> An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. . . .

Canon 2, cmt. Canon 2A.  Canon 3 requires a judge to

> accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law.  Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested.

Canon 3(A)(4).  The Code limits *ex parte* communications to matters of scheduling.  Canon 3(A)(4)(b).

In *United States v. Minksy*, 963 F.2d 870, 874 (6th Cir. 1992), the court noted that "[t]he constitution requires that a defendant be represented at every critical stage of his trial," and cited *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir. 1969), for its holding that "it is improper for the prosecutor to convey information or to discuss any matter relating to the merits of the case or sentence with the judge in the absence of counsel."  The court stated that "'[n]ot only is it a gross breach of the appearance of justice when the defendant's principal adversary is given private access to the ear of the court, it is a dangerous procedure.'" *Minksy*, 963 F.2d at 874 (quoting *Haller*, 409 F.2d at 859), and further noted that "'[r]egardless of the propriety of the court's motives in such a

-14-

case . . . the practice [of *ex parte* communication between the trial court and government counsel] should be discouraged since it undermines confidence in the impartiality of the court,'" *id.* (quoting *United States v. Earley*, 746 F.2d 412, 416 (8th Cir. 1984)).  In other words, judicial integrity must not be lost at the cost of judicial economy.  *Ex parte* communications further run the very serious risk of providing the Court with inaccurate or incomplete information that might easily have been corrected had all parties been present.

As the outset, the Court must register its disapproval of the actions of the United States Attorney's office with respect to the procedures it pursued in this case.  The Court is perplexed by the lack of a sound explanation as to why, after the Court specifically told the government that it did not want any of the materials unless they were formally submitted on the record, the government chose to deliver the materials to the Court, outside of the presence of the defendants and off the record.  As a technical matter, the Court believes that presenting the documents in the manner they were lodged meets the definition of an *ex parte* communication.  But the Court also believes that under the circumstances, it would be unfair to saddle Ms. Foley with that finding.

All of the defendants acknowledge that they had received redacted documents relating to the wiretaps, and the Court accepts Ms. Foley's explanation that she presented nothing more than was distributed earlier to the parties in the case.  Ms. Foley's explanation that she chose to follow the directions from her superiors rather than the Court's explicit instructions suggests more, perhaps, about the institutional arrogance of the office rather than her own judgment.  The government writes off the incident as an example of "no good deed going unpunished."  Gov't Br. in Supp. of Mot. for Recon. at 14.  And it is true that it is the defendants who should have furnished the documents in

support of their motion to suppress.  However, the government's casual attitude over the course of action it chose in this case and the consequences of its choices is disturbing.

On reconsideration, the Court will vacate its finding that Ms. Foley's attempt to present the wiretap documents to the Court's chambers without filing them was an *ex parte* communication. According to her explanation, which the Court accepts, she was following the direction of her superiors and members of the appellate division.  The Court believes, however, that the incident warrants an examination by the United States Attorney, followed by remedial measures that give due regard for the directives that come from this Court.

III.

The Court finds that certain aspects of the Court's order of May 26, 2011 warrant reconsideration, as discussed above.

Accordingly, it is **ORDERED** that the government's motion for reconsideration [dkt. #122] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the parties must file their joint appendix relating to defendant Freeman's motion to suppress wiretap evidence, which may include redacted documents, **on or before July 21, 2011**.  If any party seeks to file the joint appendix or any portion thereof under seal, it must file an appropriate motion under E.D. Mich. LR 5.3(b).

It is further **ORDERED** that the finding in the Court's May 26, 2011 order that the assistant United States attorney's conduct constituted an improper *ex parte* communication with the Court is **VACATED**.

It is **ORDERED** that the government's motion for reconsideration is **DENIED** in all other respects.

s/David M. Lawson

-16-

DAVID M. LAWSON
United States District Judge

Dated:  July 8, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL